

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| HIGHLANDER GOLF, INC., and<br>SUN MOUNTAIN SPORTS, INC., | ) | CIV 00-4024 |
| | ) | |
| Plaintiffs, | ) | **PLAINTIFFS' RESISTANCE TO** |
| | ) | **MOTION TO DISMISS FOR** |
| v. | ) | **IMPROPER VENUE AND** |
| WAL-MART STORES, INC., | ) | **MEMORANDUM IN SUPPORT** |
| d/b/a SAM'S CLUB, | ) | **OF MOTION FOR LIMITED** |
| | ) | **DISCOVERY ON FORUM** |
| Defendant. | ) | **SELECTION ISSUE AND** |
| | ) | **ALTERNATIVE MOTION TO** |
| | ) | **TRANSFER THE MATTER TO** |
| | ) | **THE ARKANSAS FEDERAL** |
| | ) | **DISTRICT COURT** |

## **CASE POSTURE**

This action was started by Highlander Golf, Inc. and Sun Mountain Sports, Inc., in circuit court in the State of South Dakota. It was removed to this federal court by the defendant on the basis of diversity. Defendant now seeks to dismiss the suit based on a forum selection clause in its vendor agreement.

Plaintiffs, hereinafter referred to as "Highlander," resist the motion. First, the forum selection clause was imposed after the parties entered the contract that forms the basis of the controversy and is not applicable. Second, the clause is unconscionable and unenforceable as a matter of public policy and as it was procured by fraud. Third, if the clause is found enforceable, the proper remedy is not dismissal of the suit, but rather transfer of the matter to a court of proper jurisdiction.

## BACKGROUND

Highlander entered into a contract with Defendant to sell a unique patented golf bag "dual strap" and filled purchase orders from defendant in March and April of 1998. Defendant paid in full for the straps in May and June of that year. The parties entered into another separate contract to provide golf bags with purchase orders for those golf bags being received by Highlander in August and September, 1998. The purchase orders for the golf bags were filled in October 1998.

Defendant became concerned with the lagging rate of sales of the straps sometime in the summer of 1998 and began discussions with Highlander about the topic. Highlander did not agree to any concessions. On October 26, 1998, defendant unilaterally took an offset against proceeds due Highlander for the golf bags in an amount over $300,000. Highlander did not approve of the offset and did not even have knowledge of the offset until November 17, 1998. This suit is filed for the purpose of recouping the unilateral, unauthorized offset and recovering for the fraudulent actions of the defendant surrounding the event.

## ARGUMENT

**1.    The forum selection clause is inapplicable as it is not a part of the contract at issue.**

Defendant's motion is based exclusively upon a forum selection clause attached as "Exhibit A" to its motion in this matter. The date of the "Vendor Agreement" is August 12, 1998, purporting to apply to "ANY DISPUTE ARISING IN CONNECTION WITH

2

THIS AGREEMENT OR ANY DISPUTE RELATING TO THE SERVICES OR GOODS PROVIDED HEREUNDER." Exhibit A at page 3. This vendor agreement was not present in any records of Highlander. The attached Exhibit A is not signed by defendant and was presumably never countersigned and returned to Highlander. More importantly, no such vendor agreement concerning any earlier transaction including the agreement concerning straps was located in any Highlander files. See Madson Affidavit at Paragraph 10.

The dispute centers upon the offset for lagging sales of straps, which was the subject of the March and April 1998 transactions between the parties. This post-event contract provision does not define the relationship between the parties and does not preclude Highlander from availing itself of this forum. While the defendant ordered enough product in late 1998 to effectuate an offset and thereby force Highlander into concession based upon economic coercion or into this lawsuit, the true dispute does not arise or relate to the goods rendered under the attached Vendor agreement. It relates to the earlier transaction for which no such forum selection clause is in place.

Highlander would ask the court to recognize that the clause relied upon does not apply in this situation and retain jurisdiction of the matter.

2. **The forum selection clause is unenforceable as against public policy and procured by fraud.**

If the Court finds the forum selection clause is applicable, the clause is unenforceable. The Eighth Circuit has not established a position on whether the enforceability of forum selection clauses is procedural or substantive. See MB

3

Restaurants, Inc. v. CKE Restaurants, Inc., 183 F.3d 750, n. 4 (8th Cir. 1999). Nevertheless, that distinction is not critical in that it appears that the position of both the South Dakota Supreme Court as well as the Eighth Circuit is that forum selection clauses are recognized and enforced in the absence of other factors herein discussed. Id. at 752; Baldwin v. Heinold Commodities, Inc., 363 N.W. 2d 191 (SD 1985).

Such clauses are not enforceable if unconscionable or procured by fraud. Dakota Wesleyan University v. HPG International, Inc., 1997 S.D. 30, ¶12; 560 N.W.2d 921. Unconscionability is a matter of law to be determined by the Court. See Durham v. Ciba-Geigy Corporation, 315 N.W.2d 696, 701 (SD 1982). Among the factors analyzed by the Court in determining the enforceability of such clauses are the obviousness of the clause, disparity of bargaining power between the parties, and generally the reasonableness and fairness of the clause in light of over-riding public policy considerations. In particular, fraud in the procurement of the provision is justification for refusal to enforce such clauses. Farmland Industries v. Frazier-Parrott Commodities, Inc., 806 F.2d 848 (8th Cir. 1986), partially abrogated on other grounds at 490 U.S. 495 (1989); Dakota Wesleyan University at ¶20.

The agreement found in defendant's Exhibit A is unconscionable. Highlander's files contain no such agreement. See Madson Affidavit at Paragraph 11. In its place, Highlander was provided a specimen "Vendor Information Manual" on August 11, 1998. See Madson Affidavit at Paragraph 8. The specimen is located at pages 2 and 3 of the attached Manual. The specimen differs from the contract dated the next day. The

specimen differs in form. The specimen differs in length. The specimen is illegible. The specimen contains signature lines immediately following the forum selection clause whereas the Vendor Agreement separates the clause from the signature page. Highlander was apparently provided the different version on August 12, 1998, and advised it must sign to complete the sale of bags for which a general agreement had already been reached. Not only had defendant orally agreed to purchase bags, but additionally, Highlander had authorized a deduction of $65,000 to advertise the bags in the Defendant's Christmas catalog before this agreement was required. See Madson Affidavit at Paragraph 7.

    Defendant should not be allowed to enforce the forum selection clause. Highlander had not entered into such a contract previously to the best of their knowledge. Its search of records reveals no similar clause. The parties already had reached a general agreement for the purchase of the bags, including Highlander's authorized offset of $65,000 to advertise the bags. Highlander was then provided a sample vendor's agreement it was informed must be signed, that is illegible and buried in 76 pages of other information without any highlights to alert the local producer that it will be forced to travel to Defendant's home jurisdiction to enforce its rights. Highlander was then provided an alternate form the next day and informed it must sign to complete the already agreed transaction. All the indices of unconscionability are present. The clause should be rejected as a matter of public policy and fairness.

5

Furthermore, indications of fraud are present. Highlander had only limited contact with Defendant despite the fact that defendant is reputedly the world's largest retailer. In 1997 defendant purchased a limited number of golf bags from Highlander. The next transaction was the purchase of straps in early 1998. When defendant realized the straps were not selling up to expectations, whether a result of overpurchasing, poor marketing, or some other reason, defendant had no legal recourse against Highlander. Highlander had performed as contracted. There was no issue as to the quality of the product provided. In short, defendant had to manufacture a remedy to recoup its own losses. It ordered enough of another product, the golf bags, to create an asset to offset. At the last minute, it required the Vendor Agreement as a part of that transaction. It tried to coerce Highlander into providing some concession throughout late 1998. Finally, it unilaterally offset over $300,000 without authority and without notice to Highlander. The timing of the offset is notable. Defendant internally took the offset the day before the last shipment of bags left the control of Highlander. It failed to notify Highlander until much later, and then only upon inquiry by Highlander.

A comparison of the two Sam's Club "Merchandising Agreements" clearly shows a pattern to defraud Highlander. One Merchandising Agreement was dated August 4, 1998, and sent to Highlander, signed by Highlander on August 10, 1998, returned to Sam's Club and signed by Sam's Club on August 18, 1998. Sam's Club then sent Highlander a copy of the Merchandising Agreement after it had been signed by Highlander and Sam's Club.

The Merchandising Agreement showing the $303,231 offset was dated and signed by Gary Fratto of Sam's Club on October 26, 1998. The signature of Highlander was never procured even though the form clearly requires Highlander's signature. Sam's Club did not even notify Highlander of the offset until Highlander got the check in partial payment for the golf bags on November 17, 1998. Upon questioning by Highlander on that day, Sam's Club then faxed a copy to Highlander of the Merchandising Agreement, signed only by Sam's Club.

The Vendor Agreement is one element of what appears to be a pattern to defraud Highlander. Defendant created a remedy for themselves for their shortcomings wholly without legal justification. Defendant cannot be allowed to profit from its own misdeeds. The clause should be found unfair, unenforceable, and unconscionable. This court is a proper forum.

### 3.     Highlander requests that the Court allow limited discovery on the forum selection issue.

Highlander has filed its Motion for Limited Discovery on Forum Selection Issue and Alternative Motion to Transfer the Matter to the Arkansas Federal District Court.

Limited discovery by Plaintiffs would be appropriate to allow Plaintiffs the opportunity to procure further evidence of why the forum selection clause is unenforceable. This discovery would most likely be a deposition of Sam's Club buyer Gary Fratto.

### 4. If the court finds the clause enforceable, the remedy is transfer, not dismissal.

If the Court finds that the forum selection clause is enforceable, the appropriate remedy should be the transfer of the matter to the proper forum. See <u>Terra International, Inc. v. Mississippi Chemical Corporation</u>, 119 F.3d 688 (8th Cir. 1996); cert. denied 522 U.S. 1029. While one recent case did dismiss an action based on enforcement of a forum selection clause, it is important to note that the plaintiffs in that action had already filed a counterclaim embodying the same issue in a separate action. See <u>MB Restaurants, Inc.</u>

Highlander requests that if the court believes the forum selection clause is enforceable, this be treated as Highlander's motion to transfer the matter to the Federal District Court in Arkansas.

### CONCLUSION

Highlander urges this court to find the forum selection clause inapplicable. If the Court believes it is applicable, Highlander urges the court to find the clause unenforceable. If the Court does believe the clause should be enforced, Highlander requests the Court transfer the matter to the U.S. District Court for the District of Arkansas.

Dated this 13th day of March, 2000.

8

                LYNN, JACKSON, SHULTZ & LEBRUN, P.C.

                _____
                Lee A. Magnuson
                R. Alan Peterson
                Attorneys for Plaintiffs
                141 North Main Avenue - 8th Floor
                P.O. Box 1920
                Sioux Falls SD 57101-3020
                (605) 332-5999 (Voice)
                (605) 332-4249 (Fax)

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that a true and correct copy of the foregoing **PLAINTIFFS' RESISTANCE TO MOTION TO DISMISS FOR IMPROPER VENUE AND MEMORANDUM IN SUPPORT OF MOTION FOR LIMITED DISCOVERY ON FORUM SELECTION ISSUE AND ALTERNATIVE MOTION TO TRANSFER THE MATTER TO THE ARKANSAS FEDERAL DISTRICT COURT** has been served upon counsel of record on this 13th day of March, 2000, by U.S. Mail, first class, postage prepaid, as follows:

        Kristine L. Kreiter
        Woods, Fuller, Shultz & Smith, P.C.
        P.O. Box 5027
        Sioux Falls, SD 57117

                              _____
                              Lee A. Magnuson